Good morning. Good morning, your honors. May it please the court. I'm aware of no other case where the government attempted to sustain its burden of proof on Venue in the manner in which it did here in Mr. Booth's trial. It is uncontested that in Mr. Booth's trial the only evidence of Venue were large Excel spreadsheets of bank data that contained hundreds of columns and rows, some of which were labeled debit and credit parties and had Manhattan addresses. There was nothing preventing the government from presenting a witness, either a fact witness like someone from a bank, as they've done in the past many times, and But there's also nothing requiring the government that I'm aware of to present a witness as may or may not show by a preponderance of the evidence that some transactions occurred in Manhattan. Certainly, your honor. And a review of the case law might show some instances where the government was able to rely more on the documentation, such as in one case, I recall a instructions that were sent by the defendant that clearly indicated that transfers were going to be processed through Manhattan. I also raise a case that was noted and cited in the government's brief, United States versus old O H L E, that this court decided in 2011. It's an illustrative case. The court, the government cited the case for the proposition that it's they are allowed to prove venue merely through a theory of transfers being processed through a Manhattan bank. That's something that theory we don't contest here. We can test the manner of proof, and it's no. But venue is a question of fact. Whether there was enough connection with a sovereign district happened. And why can't you just show a question of fact in any number of ways in which we show facts? Sometimes we show them by witnesses, sometimes by documents. And why weren't these documents enough? Well, I will say that the issue in O was resolved because the government was able to rely on those documents because there was actually a stipulation to the testimony. But that isn't answering my question. My question is a very simple one. When you have a fact question, you can show it in any number of ways. You can show it directly by witnesses. You can show it directly by documents or you can show it circumstantially. And why wasn't the second not the strongest in the world? But to show venue, you don't need that much. Why wasn't that enough? Well, Your Honor, that goes to the heart of the way the lower court resolved this issue in favor of the government, saying that these records, the jury had enough type of expertise and knowledge to draw a reasonable inference. The lower court called it an unremarkable inference to look at columns that are difficult to read, that have Manhattan addresses under terms such as debit and credit parties, that the jury, a late person jury could make that inference. Was that argument made by the defendant here at trial? In other words, that to the jury that the if they looked at these documents, they didn't establish venue. Your Honor, I don't think that the argument specifically was made to that extent. It was just saying that there was no venue. And because that's a very, you know, that's a very specific argument that it seems to me if it were a serious argument, would would be rebutted on summation. You're right. Well, Your Honor, I'm not sure how it could be rebutted because there was no other evidence to rebut it. The inference there and we are raising here is as a matter of law, not a reasonable inference for it to expect the jury to make the leap between these. So let's say that they had had the underlying documents, that is the actual transactions to the victims and so on through these correspondent banks in Manhattan. Would that have made a nature of your concern is what you want us to assign error to? Is it the fact that it was just these complex spreadsheets or was there something wrong with the underlying the documents that underlay those sheets? I don't think that there I think that there was something wrong with the documents themselves. There was no type of any indication or explanation other than Manhattan addresses under debit and credit party. And that would to find venue, a juror would have to understand that these Manhattan addresses under debit and credit party meant that they processed the wire transfers that that would not have implicated Manhattan otherwise that they will. So. So you're so you're making. Well, this maybe also gets to my question. You're making a very broad argument or proposition that transactions that have cars that use correspondent banks, correspondent bank transactions in Manhattan are not a basis for venue in the Southern District of New York, because that would be a very broad argument. Your Honor, I'm saying that venue can be based on wire transfers that are processed through Manhattan, but that these documents could not reasonably be seen to establish that by a layperson jury. Are you saying that they can't reasonably be seen to establish that? Or are you saying they can't reasonably be seen to establish that by a layperson jury? I mean, different times in your argument, you seem to be doing one thing and another time it's the other. One is suggested these documents don't do it for whatever reason. The other is that a jury couldn't understand them to be doing it. I think that the documents needed an explanation either within the document itself or by a witness, maybe a witness from the bank to explain what the debit and credit. Don't we presume on appeal that a jury understands that a jury is intelligent and understands what's before? Was there were there questions? Were there notes from the jury about about well, about this issue relating to the accounts? There was not, Your Honor, but there was a request to make this issue to highlight it in a separate verdict form, which I think would have been warranted here and would have focused the jury that has a lot of different aspects to consider. You know, I've taught torts for a thousand years, and the question always comes up. Is this something a jury can understand? Unless you get some expert who is often unintelligible to come in and tell the jury what all this means. And most of the time, courts say no, juries are able to understand. And so I have a little trouble with the argument that they can't understand these documents when in any number of other cases we say juries are able to understand. Well, here, Your Honor, though, a column that just says debit and credit. I don't think a layperson jury, maybe some people, but others can understand what even a debit credit party is in the banking system. Here, Your Honors are obviously highly sophisticated in these types of financial transactions, saying that maybe I wouldn't understand. There's something to that argument. Counsel, let me just make sure I'm clear on one thing. You are not challenging the jury instructions on venue. Is that right? We are. I did raise a challenge just that the limiting instruction did not go far enough on venue. There was a limiting instruction given at one point to cure or attempt to cure in the summation context. Yes. But the the substantive, the main jury charge where the judge talks about what's required and he goes through and says the government alleges four Mr. Booth caused X dollars to be wired through a bank account in Manhattan to a bank account elsewhere. All of that discussion of sort of what constitutes an overt act, what would be required in his in the judge's instruction to the jury, that if you find any one of these overt acts, that's sufficient. I don't see a challenge to that. Is that right? You're challenging whether there was enough evidence for the jury to find that, but not whether that was the right legal rubric. Yes, that is right. Thank you. And I believe that there are other situations where the jury finds a verdict, but as a matter of law, it just is not sufficient. And this is a unique situation that I think has never been attempted by the government in this matter. I'm not sure it's so unique, but I appreciate it. Well, you've You can feel free to lower the podium if you wish. I will do that. Thank you, Your Honor. Good morning, and may it please the court. My name is Jane Chong, and I'm an assistant U.S. attorney for the Southern District of New York. I represent the United States in this appeal, and I represented the United States below. This court should affirm the judgment for reasons. First, Appellant Booth's challenge to the sufficiency of the evidence on venue is meritless. I think as the panel just heard, Booth offers no basis for the assertion that a jury could not understand the bank records that form the basis for venue. Second, the government's summation was entirely proper. The government relied upon and accurately characterized the evidence that was admitted in the case, in which Booth concedes was properly admitted. Third, Booth's below-guideline sentence of 120 months was both procedurally and substantively reasonable. I'd like to go ahead and address the venue point in the last colloquy. Booth makes a variety of arguments on why the venue evidence was lacking and why the jury could not understand the wire transfer details in question. But I think the bottom line is really this. If you simply look at the wire details that form the basis for venue in this case, there is really no question that a jury could reasonably infer from them, reasonably conclude from them, that victim funds moved through banks in Manhattan. The wire details were primarily Excel spreadsheets that showed a row of data per transaction. And for the relevant transactions, 17 of them, a juror could simply follow the page from left to right to track the movement of funds, victim funds, as they traveled from the originator of a particular payment to the ultimate recipient or beneficiary. You'll see from the spreadsheets that between those two polls, those two parties, in the literal middle of the spreadsheet, there are banks listed that did the work of processing those payments. Counsel, let me ask you how that work done by the banks constitutes an overt act committed by a co-conspirator in the district. Because that, your brief cites our case law on this, and the jury instructions describe, in order for venue to lie for the conspiracy charge, the defendant himself need not be present in a given district. But a co-conspirator must commit an overt act in the district. So I understand for wire fraud that we have the general multi-district venue statute that talks about products or items moving through districts, and that's sufficient, um, arguably for money laundering. I'm trying to understand as to the securities fraud conspiracy in particular, why, assuming the evidence is sufficient to show money did move through the Southern District of New York, why is that sufficient for venue without evidence that the defendant or a co-conspirator is conspirator overtly did that or intended that, or it was reasonably foreseeable to him that that would happen? How is that sufficient? Your Honor, I think the answer is that the evidence at trial overwhelmingly showed that the co-conspirators did intend for the victim's money to be directed from the shell company accounts, uh, excuse me, to the shell company accounts, and then from the shell company accounts to Booth, specifically, uh, the fraudsters. But how did they know, but Booth's account is not in the Southern District, right? This is coming from like Thailand to Brooklyn or something, right? The money is going back and forth, but I'm talking about how does the movement through the Southern District, how is that shown to be intentional or foreseeable to any co-conspirator? Your Honor, I think there are a few answers to that, uh, but one answer is that, uh, the shell company accounts were accounts that were held in, for the most part, Long Island, and so under the theory that the waters of the Eastern District travel of a wire over the waters of the Eastern District. Contiguous waters, huh? That's right, Your Honor. Confer jurisdiction. There was nothing unforeseeable about the fact that, uh, these wires would pass through the Southern District of New York. But they confer jurisdiction under, there's not a specific venue provision in the securities fraud statute, right? Confer, confer venue. I'm sorry, confer venue. Um, thank you, Judge Confer jurisdiction, um, doesn't necessarily, only applies to sort of continuing conduct offenses, right? We don't know if it applies to securities fraud. Is it enough for securities fraud that it passed through? That's your, your contention is that because of the Long Island Sound waters, um, touching both the Eastern and the Southern District, it's enough to direct activity towards the Eastern District. That is enough in every case that involves banking to trigger venue in the Southern District. Your Honor, I think I should clarify that the government's primary position here is that, uh, the fraudsters specifically directed the victims to send their money to particular banks. In the course of the travel then, the money moved through banks in the Southern District of New York. But to the extent, Your Honor, has some concerns about whether, uh, a fraudster could have reasonably foreseen that that movement would happen, uh, the waters, uh, of the Eastern District theory does address even the reasonable foreseeable. The only thing that happens in Long Island is that is any criminal conspiracy, uh, that happens in Long Island. Um, the conspirators based on a contiguous waters theory can reasonably foresee that something might happen in the Southern District of New York. That, that can't be. So I think maybe your first theory or maybe your second theory, uh, is, is the, the stronger one. Your Honor, it's certainly true that the government's primary argument here is that the wires, um, were specifically directed to a and then in the course of the travel, um, understandably because these are overseas victim payments that are traveling into the United States. I've got to tell you that I have been very upset, troubled by how easily we have found venue in cases of this sort. On the other hand, I think there are plenty of other cases where exactly this sort of thing has been upheld with respect to people who are no more likely to foresee than these people. So that somehow we've gone in the venue cases, uh, we've sort of done this already. Whether that makes sense or not in terms of giving venue its full importance, I'm not sure, but I don't think there's anything very new about what's happening in this case. Whether that makes sense or not, I don't know. Your Honor, I think that's correct. That as a matter of law, uh, for example, under the case, the Rutiglino case that we did cite, um, but this is a established principle of law. However, uh, the government also agrees that the court need not get to the waters of the Eastern District of New York to find that there was venue here. I mean, I'm sympathetic, always sympathetic to that argument because I was in your position years ago, but, uh, there's a, there's a limit to it. Yes, Your Honor. And in that case, I think that the court can simply, um, note that it is reasonably foreseeable that when a fraudster is directing an overseas victim to pay into accounts in Long Island, that those wires might travel through the largest financial center in the court. To what extent does opposing party focus on this point that has just been made? Your Honor, I would say... Challenge. To challenge venue. Your Honor, I, I would say that the, that booth focused a great deal on venue as a general matter. General, yes. I don't think that this particular argument was a point of focus. Yeah. Thank you. Anything else? If the panel has no further questions, uh, the government rests on its submission. The judgment should be affirmed. Thank you very much. Mr. Rubin. Just to address that final point, even though, assuming that the defendant, uh, intentionally or, or intended, uh, wire transfers to pass through Manhattan, in this case, there was no witness or no other explanation available to explain that a debit and credit party with a Manhattan address means that the, those payments were processed. And, and that's the, that's the key. Was it processed through Manhattan to sustain that theory? And there was no explanation and no evidence to that effect. You're just looking at rows of columns saying debit and credit party. So, so, so let me give you a hypothetical because I'm still trying to understand your precise argument. Although I think I've got a better handle on it. If every transaction, literally every transaction in a spreadsheet, thousands of transactions showed Manhattan, Manhattan, Manhattan, Manhattan, uh, showed some connection to the Southern district of New York, uh, would that have made a difference for you? I think that that, uh, would be helpful. What, what, why would it have been helpful? Um, maybe, maybe, uh, lending it to be easier, so to speak for a lay person juror to understand that everything is related to Manhattan, but even then nobody is explaining what debit and credit party is and outside of, uh, So where, where, where, where, where do you source this theory, uh, that the, um, government must provide an explanation? Well, I mean, outside of summation, I, I think, uh, I'll, I'll reverse the question to say, no, no, no. Answer my question. Then you can reverse it. Well, I'll say how, where is there any evidence or support that a lay person jury can understand bank records to the extent. Okay. That's your question. Answer my, my question. Where, where is your, where is the source of this theory? I'm just interested. The source of the theory, um, is, is, uh, well, there's no source to the theory. It's a more of a common sense argument that a lay person juror is not going to have the expertise just like the lower court made its determination without similar sources that a lay person jury could. Yeah. Because on its sufficiency, the evidence, uh, challenge, which this is in the context of all we, all we've got to do is look at the evidence without, uh, reference necessarily to what the explanation for the evidence was. Well, Your Honor, and that's why as a matter of law, we would submit that, uh, no reasonable inference could be. Very helpful. Thank you very much. Uh, we.